## CAIN v. DICKSON et al.
### No. 4328.

Court of Civil Appeals of Texas. Amarillo.
Jan. 7, 1935.

Rehearing Denied Feb. 18, 1935.

Henry D. Meyers and Harney, Miller & Dally, all of Borger, for appellant.

H. M. Hood, of Borger, and Hoover, Hoover & Cussen, of Canadian, for appellees.

JACKSON, Justice.

Appellant prosecutes this appeal from a judgment denying him an injunction permanently enjoining appellees from selling by virtue of an execution levied thereon lot 30 in block 43 of the town of Borger. Appellant alleged that said lot constituted a part of his homestead and was therefore exempt from forced sale under said execution.

In response to the only issue submitted, the jury found that lot 30 at the time of the levy of the execution thereon, the 15th day of January, 1934, was the homestead of appellant and his family.

After the verdict was returned, appellees filed their motion for a judgment non obstante veredicto, and upon a hearing the court granted the motion and rendered judgment

that none of the lot involved, except a small portion on the rear which he fully described, constituted any part of appellant's homestead.

Neither appellant's assignments nor his propositions are sufficiently specific to require consideration of any error not apparent on the record as fundamental.

The first complaint seems to be that the court erred in refusing to set aside the verdict of the jury, and the second that he erred in holding for naught the finding of the jury.

The last contention is apparently a complete answer to the first, but in any event the court, if the facts warranted, was authorized to render a judgment despite the verdict of the jury. Article 2211, R. C. S., as amended by Acts 1931, c. 77, § 1 (Vernon's Ann. Civ. St. art. 2211); Handy v. Olney Oil & Refining Co., Inc. (Tex. Civ. App.) 68 S.W.(2d) 313.

The homestead claim depends on the uncontroverted testimony of appellant, which discloses the following: In March, 1930, he acquired lots 30, 31, and 32 in block 43 in Borger, Tex. At that time the Marland Hotel, a two-story frame building containing apartments and single rooms for let, was located on lots 31 and 32, but lot 30 was vacant. He moved into the hotel with his family in September thereafter, and has since, as operator thereof, conducted the hotel and with his family continually resided therein. A cesspool on said lot, which had been used in connection with the hotel, was discontinued and the hotel connected through pipes on lot 31 with the city sewer system before appellant purchased the property, but there was on the part of the lot excepted from sale under the execution a small house separate from the hotel used by it for a storage room and is still so used. In 1931 appellant erected on lot 30 a separate building consisting of two rooms with walls and roof independent of those of the hotel, and left a space of about three feet between the new building and the hotel. The water, gas, and electric light systems were extended from the hotel into and served the new building. The hotel was connected to the new building by an inclosed four-foot hall with two doors, one into the hotel and the other into the new building through which people could pass to the dining room to be operated in the new building. The appellant did not intend that he, in connection with his operation of the hotel, would conduct a dining room in the new building. His intention was to lease said building, when completed, for revenue. Pursuant to this intention, he leased it to a lady for, and who operated therein, an eating house, using

one room for a kitchen and the other for a dining room in which she served meals to the public, including the guests of the hotel who desired to patronize her. The appellant and his family sometimes ate their meals with her, but the patrons paid the lady for their meals and she, as tenant, paid appellant the agreed rental for the use of the leased building. The eating house was not a financial success, and, after about eight months, the lease was terminated by the tenant. The building then remained vacant for a while, and in the summer of 1932, for rental purposes, it was by appellant rearranged into two separate apartments of five rooms each. A tenant paying satisfactory rental was promptly obtained for each apartment, each of which was still occupied by the original tenant at the time of the trial. Each apartment had a front and rear door and could be entered without going into the hotel, but the tenant occupying the north apartment has access from his bedroom to a bathroom in the hotel which he uses. Back of the new building on lot 30 was a vacant space on which appellant sometimes grew flowers and kept chickens and on which his young son with other children of the neighborhood played. Lot 30 and the new building thereon were never used or occupied by appellant or his family as a part of their homestead, except as indicated above, and there is no testimony that there was any intention of so occupying said property in the future.

The execution levied on January 15, 1934, against the property involved was issued on a valid judgment held by appellee against appellant. The allegation on which injunctive relief is sought is as follows: "Plaintiff avers that some time in March, 1930, plaintiff purchased lots Nos. 30, 31, and 32 in Block No. 43 of the original townsite of the City of Borger in Hutchinson County, Texas, together with all the improvements thereon situated and that immediately after such purchase he moved therein with his family and since said time has constantly occupied and used said premises for the purposes of a home for himself and his said family and at this time plaintiff and his said family are actually occupying and using the premises for the purposes of a home and did occupy and use said premises for such purposes upon all the dates and times hereinafter mentioned and set forth and defendants herein well knew that at all times this plaintiff and his family have used and occupied said premises at all such times as a home. That since plaintiff purchased and moved into and on to said premises as aforesaid he has used and occupied no other property for the purposes of a home, all of

which is and was well known at all times to the defendants herein and each of them."

It is obvious from this allegation that appellant based his defense on his claim that the property constituted a part of his residence homestead.

In Clem Lumber Company v. Elliott Lumber Company et al. (Tex. Com. App.) 254 S. W. 935, 938, the court says:

"Defendant's pleadings on the question of homestead were very general. He alleged that he was the head of a family, and entitled to both a residence and business homestead in Eastland. * * * There was no allegation that defendant had or pursued a calling or business and that said property was adapted for use as a place to pursue the same and reasonably necessary for such purpose. * * *

"There being no allegation by defendant that he had or followed any particular calling or business, that said house was adapted and reasonably necessary thereto, and that he intended and was preparing to use such house, when completed, as a place in which to exercise such calling or business, we do not think his pleadings raised an issue of business homestead."

The allegations therein held to be insufficient are more comprehensive than the pleadings relied on by appellant to authorize him to assert that the property constituted his business homestead.

"The homestead exemption does not arise as a matter of right, so as to preclude any action against property so impressed upon the mere showing that it is in fact homestead. It is an exemption or right that may be waived at the option of the party entitled to the exemption or right. That being true, it is incumbent upon a party desiring to avail himself of the homestead exemption to plead fully its homestead character * * * otherwise he cannot avail himself of such homestead right or exemption." Shonaker et al. v. Citizens' Loan & Investment Co. (Tex. Civ. App.) 8 S.W.(2d) 566, 568, and authorities cited.

"Courts have no more power, until their action is called into exercise by some kind of pleading, to render a judgment in favor of any person than they have to render judgment against a person until he has been brought within the jurisdiction of the court in some method recognized by law as sufficient." Dunlap v. Southerlin, 63 Tex. 38.

It is as essential to plead as it is to prove a cause of action. Automobile Finance Co. v.

Bryan (Tex. Civ. App.) 3 S.W.(2d) 835, and authorities cited.

■■ Under these authorities appellant's allegations were insufficient to authorize a decree adjudging the property to be his business homestead and it is unnecessary to determine whether the testimony presents such an issue, since under the pleadings appellant was required to show that the property was a part of his residence homestead to entitle him to the relief sought and this, in our opinion, he failed to do.

"To protect lots in a town or city, not actually occupied by the family residence or its appurtenances, they must be substantially used by the family for home purposes. When they are detached by inclosures from the homestead lot proper, and are improved for the purpose of being leased to tenants, and of thereby producing an income, it is evident they are no longer used as adjuncts of the family residence, and should be no longer exempt from forced sale. The mere fact that portions of the land may be occasionally used for a family purpose, such as to grow vegetables, to shelter live-stock, or to furnish water, is not enough to shield it from sale under execution for the payment of the owner's debts. The principal use to which they are subjected must be looked to; and where, as evidently appears in this case, the main purpose to which the property is to be devoted is to bring in an income, and the family use is not only secondary and subordinate, but of trivial importance, the property should be no longer deemed a part of the homestead." Blum v. Rogers, 78 Tex. 530, 15 S. W. 115, 117.

"The permanent appropriation of a part of the homestead tract to an inconsistent use is an abandonment thereof. Wynne v. Hudson, 66 Tex. 1, 17 S. W. 110. The erection of a building upon a portion of the homestead tract with no view of making it a part of the homestead, but with the intention of renting it, is an abandonment of such portion of the tract." Lipscomb et ux. v. Adamson Lumber Co. (Tex. Civ. App.) 217 S. W. 228, 230. See, also, Atwood et ux. v. Guaranty Construction Co. (Tex. Com. App.) 63 S.W.(2d) 685.

■ The court did not commit error in rendering a judgment non obstante veredicto, since according to the record he was authorized to have directed a verdict in favor of appellees. Clem Lumber Co. v. Elliott Lumber Co., supra.

The judgment is affirmed.